UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

ALEXANDRA LEE NORWOOD,

    Defendant.
_____/

Case No. 07-20454

HONORABLE SEAN F. COX
United States District Court

ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE

Defendant Alexandra Lee Norwood ("Norwood" or "Defendant") is charged with one count of being a felon in possession of a firearm and one count of possession of a sawed-off shotgun. Before the Court is Defendant's Motion to Suppress Evidence [Doc. No. 30], filed on June 4, 2008. An evidentiary hearing was held on September 23, 2008, at which the Court heard the testimony of Officer Scott Watson ("Watson"), Officer Steve Colosky ("Colosky"), and Mr. Ricardo Yearby ("Yearby"). The hearing was continued on October 24, 2008, at which the Court heard the testimony of Mr. Alexander Cook ("Cook"). The hearing was completed on February 27, 2009. The Court heard further testimony from Watson and Colosky, as well as testimony from Officer Scott Rust ("Rust"), Officer Randy Forman ("Forman"), and Officer Dwayne Cherry ("Cherry"). For the reasons below, the Court **DENIES** Defendant's Motion to Suppress Evidence.

1

FINDINGS OF FACT

On the morning of August 11, 2007, the Flint Area Narcotics Group ("FANG") received an anonymous tip that Norwood was selling drugs in the area of the apartment complex located at 1819 Bagwell in Flint, Michigan ("the Apartment Complex"). FANG officers were familiar with Norwood because of prior contact on narcotics-related arrests, and they also knew that Norwood had outstanding bench warrants for his arrest. These facts led FANG officers to set up surveillance outside the Apartment Complex to look for Norwood.

When FANG officers located Norwood, they arrested him on his outstanding bench warrants, and inquired as to his place of residence. The manager of the Apartment Complex, Mr. Cook, approached as FANG officers were arresting Norwood. Cook told FANG officers that he was familiar with Norwood, and that Norwood was routinely was seen at Apartment #13. Invited inside by Cook, FANG officers Watson and Colosky entered into the unlocked common area of the Apartment Complex.

Cook told Watson that Apartment #13 was on the third floor, and could be accessed by the staircase. Hearing noise coming from the upstairs, Colosky requested additional officers accompany them for backup. Officers Rust and Randy Forman accompanied Watson, Colosky, and Cook, climbed the stairs to Apartment #13 and approached the door. After climbing the stairs, Watson and Colosky were on the landing directly outside the doorway to Apartment #13, and Cook, Rust and Forman were approximately four to six steps behind Watson and Colosky,

further down the stairwell.[1] (*see* Exhibits J, J-1).

Cook, Watson, Colosky, Rust, and Forman found the door to Apartment #13 slightly ajar, with Cook testifying that the door was approximately one foot open. A coffee table was partially in Watson's and Colosky's view through the doorway, with the coffee table sitting approximately two to three steps to the right of the door inside the apartment.[2] From their vantage point, Watson and Colosky could see a substance immediately recognizable as loose marijuana on the coffee table inside Apartment #13. Watson, Colosky, Rust and Forman then left Cook outside Apartment #13 entered the apartment, finding firearms and marijuana in plain view in the apartment's living room. The officers briefly detained and questioned the two individuals found inside, engaged in a protective sweep of the apartment, and waited for a search warrant to be secured. The affidavit for search warrant, signed by Officer Watson, included allegations that the door was open when the officers arrived, and that Watson saw the marijuana in plain view on the

---

[1] Officer Rust testified that, as Watson and Colosky stood atop the staircase on the landing outside Apartment #13, Rust, Cook, and Forman were halfway down the staircase. Rust further testified that, from where he stood on the landing, his line of sight into Apartment #13 through the open door only allowed him to see one to two feet above ground level. Rust further testified that Cook stood right next to him on the stairs, and would have had roughly the same line of sight into the apartment.

[2] In his testimony on October 24, 2008, Cook testified that he too could see the coffee table from his vantage point outside Apartment #13, but that he could not see marijuana on the table from outside the apartment. Testimony by Watson, Colosky, Rust and Forman all highlighted that Cook's line of sight into Apartment #13 was not the same as that of Watson and Colosky. Specifically, as Watson and Colosky were standing directly outside the apartment threshold, Cook was somewhat behind the two of them, and several feet below on the stairway. Given the testimony of Colosky that FANG officers would not allow a civilian to enter harm's way by being directly alongside them as they approached the door of an individual the officers suspected of drug activity, it makes sense that Cook would have had a less optimal sight line to the suspected contraband. To the extent that Cook's testimony regarding the marijuana conflicts with the testimony of Watson and Colosky, the Court fully credits the testimony of Watson and Colosky, given their superior vantage point and expertise in identifying contraband.

coffee table as he stood outside and looked into Apartment #13.

## ANALYSIS

"[I]n seeking suppression of evidence the burden of proof is upon the defendant to display a violation of some constitutional or statutory right justifying suppression." *United States v. Rodriguez-Suazo*, 346 F.3d 637, 643 (6th Cir.2003). "The standard of review for determining the sufficiency of the affidavit is whether the magistrate had a substantial basis for finding that the affidavit established probable cause to believe that the evidence would be found at the place cited." *Id*. Here, Defendant argues that statements by Officer Watson in the affidavit, indicating that the door to Apartment #13 was open and that contraband was in plain view, were falsehoods.

In determining whether to suppress evidence based on an allegation that an affidavit contains false statements, the Court applies a multi-part test. First, the Court must determine whether the defendant has proven by a preponderance of the evidence that the affidavit contains deliberately or recklessly false statements. *United States v. Charles*, 138 F.3d 257, 263 (6th Cir.1998)(citing *Franks v. Delaware*, 438 U.S. 154 (1978)). Second, if the Court finds such false statements, the Court must determine whether the affidavit, without the false statements, provides the requisite probable cause to sustain the warrant. *Id*.

Defendant argues Officer Watson included deliberate or reckless falsehoods in his affidavit. Specifically, Defendant argues that statements in the warrant's affidavit indicating that the door to Apartment #13 was open, and that marijuana was in plain view, were deliberate or reckless falsehoods. As stated *supra*, this Court, under the required preponderance standard, finds the credible testimony to demonstrate that the front door to Apartment #13 was slightly ajar

when Mr. Cook and the FANG officers arrived, and that contraband was in plain view from Watson and Colosky's vantage point in the hallway.

"Searches and seizures inside a home without a warrant are presumptively unreasonable." *Payton v. New York*, 445 U.S. 573, 586 (1980). However, an exception to that presumption of unreasonableness exists which is commonly referred to as the "plain view" exception, and applies when (1) the officer did not violate the Fourth Amendment in arriving at the place where the evidence could be plainly viewed; (2) the item is in plain view; and (3) the incriminating character of the evidence is immediately apparent. *Horton v. California*, 496 U.S. 128, 136 (1990).

Watson's, Colosky's, Rust's, and Forman's entry in to Apartment #13 without a warrant was premised upon Watson's and Colosky's observing marijuana on a coffee table in plain view from their vantage point in the hallway. In the instant case, the Court finds that FANG officers were lawfully in the hallway outside Apartment #13, that Watson and Colosky did see contraband inside the apartment from their vantage point, and that, given their training and expertise in identifying narcotics, the incriminating character of the marijuana was immediately apparent to Watson and Colosky. For this reason, the plain-view exception to the warrant requirement applies in this case.

As the Court finds that Watson and Colosky could see marijuana in plain view from outside Apartment #13, the statements by Watson in his affidavit for a search warrant were not deliberately or recklessly false. Due to the Court's finding no statements in the affidavit were deliberately or recklessly false, the Court need not evaluate the second prong under *Charles* and *Franks*.

As Defense Counsel has not demonstrated that statements by Watson in his affidavit for search warrant were deliberately or recklessly false, the Court finds that Defendant has not met his burden under *Rodriguez-Suazo* to show the violation of a constitutional right justifying suppression. As such, Defendant's Motion to Suppress [Doc. No. 30] is **DENIED**.

### CONCLUSION & ORDER

For the reasons set forth above, **IT IS ORDERED** that Defendant's Motion to Suppress Evidence [Docket No. 30] is **DENIED**.

**IT IS SO ORDERED**.

S/Sean F. Cox
Sean F. Cox
United States District Judge

Dated: March 2, 2009

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 2, 2009, by electronic and/or ordinary mail.

S/Jennifer Hernandez
Case Manager